## State v. Black
[*Cite as 8 AOA 44*]

*Case No. 89 CA 45, 89 CA 46
Miami County, (2nd)
Decided November 27, 1990*

*James D. Bennett, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 W. Main Street, Troy, Ohio 45373, Attorney for Plaintiff-Appellant.*

*Alfred J. Weisbrod, 9 West Water Street, P. O. Box 637, Troy, Ohio 45373, Attorney for Defendant-Appellee.*

WOLFF, P.J.

The State of Ohio has appealed from orders of the Court of Common Pleas of Miami County dismissing two indictments against Malcolm C. Black. These indictments were apparently dismissed for failure of the State of Ohio to bring Black to trial within the time limit imposed by the Interstate Agreement on Detainers enacted in Ohio at R.C. 2963.30. In its single assignment of error, the state contends that this action by the trial court was error. We agree and accordingly reverse.

The chronology of events is as follows:

November 14, 1988: Black, at the time a prisoner of the state of Nevada, executed an "INMATE REQUEST FOR FINAL DISPOSITION OF CHARGES VIA THE INTERSTATE

AGREEMENT ON DETAINERS." On this form, Black stated that there was an outstanding charge lodged against him in Troy, Miami County, Ohio, which he identified as "CASE #87-cr-109". This form contained the following language: "If the Nevada Department of Prisons does not have a detainer on file from this jurisdiction, I hereby request that you forward this form, along with your certificate, to the jurisdiction I have identified above, indicating my request for a disposition of any untried indictments, complaints, or informations."

January 13, 1989: Nevada served Black with an "Agreement on Detainers: Form I." This form was styled "NOTICE OF UNTRIED INDICTMENT, INFORMATION OR COMPLAINT AND OF RIGHT TO REQUEST DISPOSITION." This form mentioned with specificity the three charges contained in the indictment in Miami County Case No. 87-CR-151, filed December 18, 1987. This notice also informed Black of his right to request disposition of these charges under the Interstate Agreement on Detainers.

Black executed the "Agreement on Detainers: Form II." This form is styled "INMATE'S NOTICE OF PLACE OF IMPRISONMENT AND REQUEST FOR DISPOSITION OF INDICTMENT, INFORMATIONS OR COMPLAINTS". This form, addressed to the Miami County Prosecutor, stated Black's present whereabouts in the Nevada prison system, and specifically requested disposition of the three charges contained in the December 18, 1987 indictment pursuant to the Interstate Agreement on Detainers.

Nevada completed the "Agreement on Detainers: Form III." This form was styled "CERTIFICATE OF INMATE STATUS" and identified the penal facility in which Black was imprisoned, his term of commitment, his parole eligibility date of June 20, 1989, and the maximum expiration date under his sentence, May 11, 1990.

Nevada executed "Agreement on Detainers: Form IV" styled "OFFER TO DELIVER TEMPORARY CUSTODY", addressed to the Miami County Prosecutor, which offered to deliver temporary custody of Black to Miami County, Ohio, for disposition of the Miami County charges in accordance with the Interstate Agreement on Detainers.

March 7, 1989: The Miami County Prosecutor received forms II, III, and IV from the administrative offices of the Nevada Department of Prisons. The covering letter from the Nevada Department of Prisons was dated *March 3, 1989.*

June 26, 1989: Black was returned to Ohio after being paroled in Nevada.

July 3, 1989: Black moved to dismiss the December 18, 1987 three count indictment (87-CR-151) for failure of the state to bring him to trial within the time limits set forth in the Interstate, Agreement on Detainers.

July 5, 1989: Black moved to dismiss the indictment filed October 20, 1987 (87-CR-109)1 which appears to have been replaced by the first count of the December 18, 1987 indictment, for failure of the state to bring him to trial within the time limits set forth in the Interstate Agreement on Detainers.

July 31, 1989: Trial court held evidentiary hearing on motions to dismiss.

August 10, 1989: Trial court entered orders dismissing both indictments.

The Interstate Agreement on Detainers provides in part as follows:

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged* against the prisoner, he shall be brought to trial within one hundred eighty days *after he shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

"***

"The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, *who shall promptly*

*forward it* together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." (Emphasis ours.)

The narrow issue in this case is whether the 180 day period within which Ohio, the receiving state, was required to bring Black to trial commenced, as Black claims, on the date that he requested disposition of the Ohio charges, or when, as the state contends, Ohio, by the Miami County Prosecutor, received Black's request for disposition of the Ohio charges. Assuming, *arguendo*, that Black's position is correct, we would preliminarily have to determine whether the time began to run on November 14, 1988, when the record reflects that Black first requested disposition, or January 13, 1989, when he again requested disposition.

Assuming Black's position is correct, we believe the later date would be the date upon which the 180 time period would begin to run. Black was served with the October 20, 1987 indictment, containing a single count, November 16, 1987 (87-CR-109). The record reflects that he failed to appear for his arraignment on 87-CR-109. The one count indictment appears to have been superseded by the three count indictment returned December 18, 1987 (87-CR-151). Although it does not appear of record, the state contends, and Black does not controvert, that the state first learned in January, 1989, that Black was incarcerated in Nevada, and thereafter placed its detainer on Black in Case No. 87-CR-151. Pursuant to the express terms of Article 3(a), the Interstate Agreement on Detainers only comes into the effect when a detainer has been lodged. See also *United States v. Hutchins* (1980 N.D. Ind.) 489 F. Supp 710 at 713. When he filed his initial request for disposition November 14, 1988, Black could have well known about the pending Miami County charges although a detainer had not been lodged because he had been served with the indictment in 87-CR-109. The above quoted language from Black's initial request for disposition suggests that the Nevada Department of Prisons might not have then been in receipt of a detainer in connection with the Miami County charges. It seems clear that as of January 13, 1989, a detainer had been lodged by Ohio in connection with 87-CR-151, based on the specificity of Agreement on Detainers: Form I "NOTICE OF UNTRIED INDICTMENT INFORMATION OR COMPLAINT AND RIGHT TO REQUEST DISPOSITION" served that date by

Nevada upon Black." Thus, we conclude that if Black's position is correct, January 13, 1989, would be the date upon which the 180 day period would commence to run.

We do not, however, agree with Black's position. Although Black's contention that the 180 day period should commence as of the date he made a request for disposition of the charges, i.e., January 13, 1989, is supported by respectable authority - *State v. Ferguson* (1987), 40 Ohio App. 3d, 306; *Hutchins, supra*, we think that the Interstate Agreement on Detainers clearly contemplates that the 180 day period only begins to run as of the time that the receiving state's prosecuting attorney receives the prisoner's notice and request for final disposition, together with the sending state's, i.e. Nevada's, certificate, as described in Article 3(a). Support for this position can be found at *State v. Reitz* (1984), 26 Ohio App. 3d 1. We also think that this construction of Article 3(a) is inferable from other sections of the Interstate Agreement on Detainers:

"Article IV

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article in (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: [,]provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: [,] and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

"***

"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state,...

"***

"Article V

"(h) From the time that a party state receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending state, the state in which the one or more untried indictments,

informations or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping and returning the prisoner,[;]the provisions of this paragraph shall govern unless the states concerned shall have entered into a supplementary agreement providing for a different allocation of costs and responsibilities as between or among themselves. Nothing herein contained shall be construed to alter or affect any internal relationship among the departments, agencies and officers of and in the government of a party state, or between a party state and its subdivisions, as to the payment of costs, or responsibilities therefor."

It is clear from these provisions that the Agreement anticipates a period of 120 days within which the prisoner must be tried once he has arrived in the receiving state, in this case Ohio (Article 4[c]). If the receiving state exercises its right to receive the prisoner for disposition of the charges pending in the receiving state, there is a mandatory thirty-day waiting period between the time that the sending state receives the request from the receiving state and the time that the sending state can honor the request and deliver the prisoner to the receiving state (Article 4[a]). If we were to accept Black's position, then there would be only thirty days within which to accomplish the following: the sending state's processing of the prisoner's request, comple- tion of its own paper work, and transmission of same to the receiving state; actual delivery of the paperwork to prosecuting attorney in the receiving state; the receiving state's evaluation of the request for disposition and determination of whether to seek return of the prisoner; actual transportation of the prisoner from the sending state to the receiving state.

Pursuant to Article 5(h), the expense of transporting and housing the prisoner for purposes of disposition in the receiving state must be borne by the receiving state. Thus, the determination of whether to seek return of a prisoner upon a request for disposition under the Interstate Agreement on Detainers involves a number of time consuming discretionary decisions 'by the receiving state which must take into account the receiving state's financial resources, availability of personnel and jail space, condition of its court dockets, as well as whether it is in the receiving state's interest to prosecute the pending charges. We think it is unrealistic to expect two states to accomplish all of the above within a period of thirty days. We recognize that a plausible argument can be made that the phrase "after he shall have caused to be delivered" should be interpreted to emphasize the date that the prisoner put the process in motion rather than the date that the required paperwork was actually delivered to the prosecuting attorney. We conclude, however, that the practical realities of the situation militate in favor of the latter interpretation, as adopted in *Reitz*.

We also appreciate that the salutary purposes of the Interstate Agreement on Detainers can be frustrated, as happened here, by delay on the part of the sending state, here the State of Nevada, in transmitting the required paperwork, completed January 13, 1989, to Ohio. See also *Hutchins, supra*. In the absence, however, of more definitive legislative language than presently appears in the Interstate Agreement on Detainers, we are reluctant to interpret this legislation so as to prevent the State of Ohio, which is concededly without fault in this case, from prosecuting a prisoner on account of the sending state's delaying the transmittal of the required paperwork to Ohio. At least in this respect, the facts of this case differ from those in *Ferguson, supra*. In that case, the prisoner's request was made January 12, 1983, and transmitted to the warden of the Wisconsin prison where the prisoner was then incarcerated. Wisconsin delayed sending the request to Ohio and, in fact, mailed it to the wrong address. Nevertheless, the Ohio prosecutor had actual knowledge of the request as of March 28, 1983, but took no action until late September, 1985, when the prisoner executed another request. concluded that the "prosecutor's actual receipt of the request on approximately March 28, 1983 also effectively cured the mistake of mismailing the request to the wrong Ohio official." *Id.* at 311. Thus, *Ferguson* turned as much on Ohio's dereliction of duty under the Interstate Agreement on Detainers as it did on Wisconsin's. We acknowledge, as we must, that *Reitz*, unlike this case, did not involve a prisoner who did what he was required to do under the Interstate Agreement on Detainers. Even so, and based on the above considerations, we conclude, as did *Reitz*, that the 180 day time limit should only run from the time that the prosecuting attorney in the receiving state receives the paper work required under the Interstate Agreement on Detainers. If delay by sending states in processing requests for disposition, either by inadvertence or design, is a chronic problem, we think the remedy must come from the legislature and not from the courts through

a *Ferguson/Hutchins* type construction of Article 3(a).

The assignment of error is sustained, the orders dismissing the indictments will be reversed, and the cases will be remanded for further proceedings consistent with this opinion.

FAIN, J., and GRADY, J., concur.