OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. Mourey, Appellee.

[Cite as State v. Mourey (1992),    Ohio St.3d    .]

Criminal law -- Extradition -- Interstate Agreement on Detainers -- One-hundred-eighty-day time period set forth in R.C. 2963.30 begins to run, when -- Prisoner substantially complies with requirements of Article III(a) and (b) of R.C. 2963.30, when.

1.  The one-hundred-eighty-day time period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers, begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof.

2.  A prisoner substantially complies with the requirements of Article III(a) and (b) of R.C. 2963.30 when he or she causes to be delivered to the prison officials where incarcerated, appropriate notice or documentation requesting a disposition of the charges for which the detainer has been filed against him or her.

(Nos. 91-1378 and 91-2024 -- Submitted May 19, 1992 -- Decided September 2, 1992.)

Appeal from and Certified by the Court of Appeals for Franklin County, No. 90AP-1199.

On July 2, 1986, defendant-appellee, Ghassan Mourey, was indicted by the grand jury on one count of aggravated trafficking in violation of R.C. 2925.03. When defendant failed to appear at his arraignment, a capias was issued for him and bail was forfeited.

In July 1989, the Franklin County Sheriff's Office discovered defendant's whereabouts, and consequently filed a detainer against him with the Torrance, California Police Department. About that time, defendant was charged with possession of cocaine and stood trial before the Superior Court of Los Angeles County, California. On or about December 6, 1989, defendant was sentenced upon a finding of guilt to the possession charge and was thereafter incarcerated in the California Institution for Men in Chino, California.

On December 19, 1989, defendant filled out a form entitled "Inter-State Agreement on Detainers Penal Code Section 1389," with the following information: (1) his place

of imprisonment (California Institution for Men, Box 441, Chino, California 91708); (2) his request for a final disposition (pursuant to Section 1389 of the Penal Code of California) of criminal charges pending against him in Franklin County, Ohio; (3) his name and inmate number; (4) the crime he was convicted of in California and the court that sentenced him; (5) the date and term of sentence; and (6) that a "Hold" or notice of criminal action pending against him was filed with the Warden/Superintendent of the California Institution for Men by the Columbus Police Department on December 19, 1989.

In supplement of the record on appeal before the court of appeals, the parties stipulated that the form was served on California penal authorities on the same day it was filled out by defendant, December 19, 1989. The parties further stipulated that the form was sent via certified mail by the California penal authorities on January 10, 1990, and was received by the Franklin County Prosecutor's Office on January 17, 1990, "showing receipt of defendant's demand for a speedy trial." However, the prosecutor desired additional information from the California prison officials before he could proceed. Upon receiving additional information from California authorities, the prosecutor's office filed several forms with the clerk of courts on February 28, 1990, including an offer by California authorities to deliver temporary custody of defendant. Subsequently, an acceptance of temporary custody was filed with the Franklin County Clerk of Courts on April 2, 1990. Defendant was returned to Ohio on June 20, 1990 and the trial date was set for July 18, 1990.

On the date set for trial, defendant filed a motion to dismiss for failure to bring his case to trial within the one-hundred-eighty-day limitation period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers ("IAD" or "agreement"). Thereafter, a hearing was held to consider defendant's motion on September 24, 1990. At that time, the trial court overruled the motion and stated: "I find that the request with the necessary information was received after February 15th, and the time has not run." Consequently, defendant pled no contest to the trafficking count and was found guilty as charged.

Upon appeal, the court of appeals reversed and dismissed the case. In pertinent part, the appellate court reasoned as follows:

"This court finds that [defendant] substantially complied with the IAD request requirements on December 19, 1989. He did everything that could reasonably be expected of him. R.C. 2963.30, Article III(b), requires [defendant] to give the written notice and request for final disposition to the official having custody of him, which he did. This official in turn is the one who must promptly forward the information the inmate gives him plus a certificate of inmate status to the prosecuting official and court in the receiving state. Hence, this court finds that the state of Ohio had one hundred eighty days from December 19, 1989 to try the [defendant], to wit: until June 17, 1990.

"In the case sub judice, [defendant] filed his motion to dismiss on July 18, 1990. Up to that time, he had not waived his right to a speedy trial. Hence, his motion to dismiss

should have been granted."

The court of appeals, finding its judgment to be in conflict with the judgment of the Court of Appeals for Miami County in State v. Black (1990), 70 Ohio App.3d 440, 591 N.E.2d 368, and the judgment of the Court of Appeals for Summit County in State v. Reitz (1984), 26 Ohio App.3d 1, 26 OBR 168, 498 N.E.2d 163, certified the record of this case to this court for review and final determination (case No. 91-2024). The cause is also before this court pursuant to the allowance of a motion for leave to appeal (case No. 91-1378).

Michael Miller, Prosecuting Attorney, and Joyce S. Anderson, for appellant.

Randall Dana, Ohio Public Defender, and Kort Gatterdam, for appellee.

Sweeney, J. The issue certified by the court of appeals to this court is as follows: "When does the one-hundred-eighty-day period set forth in R.C. 2963.30, within which a criminal defendant incarcerated in another jurisdiction must be brought to trial, begin to run?"

For the reasons that follow, we hold that the one-hundred-eighty-day time period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers, begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof. Since we find that defendant substantially complied with R.C. 2963.30 on December 19, 1989, we therefore affirm the decision of the court of appeals below.

R.C. 2963.30 provides in relevant part:

"THE INTERSTATE AGREEMENT ON DETAINERS

"The contracting states solemnly agree that:

"Article I

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

"* * *

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he

shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." (Emphasis added.)

The appellant, state of Ohio, essentially argues that the one-hundred-eighty-day speedy trial period set forth above will begin only when the prisoner (defendant) files with the prosecutor and the court a proper request accompanied by certification from the official having custody of the defendant.

The defendant contends that R.C. 2963.30 requires only that a prisoner substantially comply with the terms of the IAD. Defendant submits that once a prisoner completes his or her responsibility as set forth in the statute, the one-hundred-eighty-day time period begins to run.

As provided in Article I of the agreement, the purpose of the IAD is to encourage the expeditious and orderly disposition of charges that are outstanding against prisoners who are incarcerated in other states that are parties to the agreement. In addition, Article IX of the IAD, as codified by R.C. 2963.30, provides in part that "[t]his agreement shall be liberally construed so as to effectuate its purposes."

In order to adequately answer the certified question before us in line with the stated purposes of the IAD, it must be understood and determined what processes are under the control of the prisoner upon whom a detainer has been filed. A careful review of Article III(a) of R.C. 2963.30 reveals that the prisoner "shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *." (Emphasis added.) The other requirements listed in Article III(a) are the responsibility of the officials having custody of the prisoner.

Article III(b) of the agreement then requires that the written notice of the prisoner "* * * shall be given by the prisoner to the warden, commissioner of corrections or other official having custody of him * * *." The remainder of subsection (b) provides the other responsibilities of the

officials having custody of the prisoner.

Upon a careful review of the record, we believe defendant did everything reasonably required of him that was within his control when he "caused to be delivered" his IAD request form to the California prison officials. We therefore embrace the substantial-compliance standard as being closer to effectuating the purposes of the IAD, because a strict interpretation of the agreement tends to hold the prisoner accountable for measures and duties that are totally beyond his or her control. In our view, delays in expediting an IAD request attributable to prison officials or prosecuting authorities should not toll the running of the one-hundred-eighty-day time period. Moreover, we believe that a substantial-compliance standard is in line with the liberal-construction mandate set forth in Article IX of the agreement.

The state's suggested remedy of a mandamus action or the like to compel prison officials or prosecuting authorities to act upon a prisoner's request to resolve the detainer is, in our view, not really relevant or satisfactory, inasmuch as the IAD is designed to provide the entire process for resolving detainers. Thus, we believe that anything required under the IAD that is beyond the prisoner's control must be the responsibility of the states and their instrumentalities which are parties to the agreement. While case law interpreting the IAD provides examples of different types of unnecessary delays that have occurred in the resolution of detainers, see, e.g., Black, supra, and Reitz, supra, we do not believe the prisoner should be denied his or her right to a speedy trial once the prisoner has reasonably fulfilled his or her responsibilities under the agreement.

Based on all of the foregoing, we further hold that a prisoner substantially complies with the requirements of Article III(a) and (b) of R.C. 2963.30 when he or she causes to be delivered to the prison officials where incarcerated, appropriate notice or documentation requesting a disposition of the charges for which the detainer has been filed against him or her.

Research indicates a split of authority around the country with respect to the adoption of a strict or substantial-compliance standard in interpreting a prisoner's compliance with the IAD. See Annotation, Validity, Construction, and Application of Interstate Agreement on Detainers (1980), 98 A.L.R.3d 160. However, as previously mentioned, we find the substantial-compliance standard is more consonant in promoting the stated purposes of the agreement, whereas a stricter standard tends to undermine such purposes. Accord State v. Ferguson (1987), 41 Ohio App.3d 306, 535 N.E.2d 708. See, e.g., Pittman v. State (Del. 1973), 301 A.2d 509; State v. Seadin (1979), 181 Mont. 294, 593 P.2d 451; Commonwealth v. Martens (1986), 398 Mass. 674, 500 N.E.2d 282; and McBride v. United States (D.C.App. 1978), 393 A.2d 123, certioiari denied (1979), 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482.

In reviewing the law we adopt today as applied to the facts of the cause sub judice, we find that the defendant satisfied his responsibilities set forth in R.C. 2963.30 by sufficiently completing the request form for a speedy trial and delivering it to the California prison officials. The fact

that the California officials failed to complete defendant's request pursuant to the requirements of the IAD should not be attributed to defendant, since he did everything that could be reasonably expected of him in commencing the process to resolve his detainer under the terms of the IAD. Since defendant substantially complied with the terms of the IAD on December 19, 1989, the one-hundred-eighty-day speedy trial time period of Article III(a) of R.C. 2963.30 began to run on that date. Thus, the state's failure to bring defendant to trial within that speedy trial time period constituted a violation of his rights under the agreement, and the trial court erred in overruling defendant's motion to dismiss the Ohio charge brought against him.

Therefore, the judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

Douglas, Wright and H. Brown, JJ., concur.

Moyer, C.J., Holmes and Resnick, JJ., dissent.

Alice Robie Resnick, J., dissenting. I respectfully dissent from the majority decision. The practical result of today's majority opinion is that serious felony cases will potentially be dismissed through no fault of the prosecuting attorney. By holding that the one-hundred-eighty-day speedy trial period begins to run when the prisoner "substantially complies with the requirements of the statute," the majority completely overlooks legitimate reasons for delay after the request by the prisoner is placed in the hands of the warden, commissioner of corrections or other appropriate prison officials. Additionally there could be instances where a prisoner confined in another state has several detainers pending in different jurisdictions within Ohio. In such a case, today's holding would require that all charges be prosecuted within one hundred eighty days of the date from which the prisoner substantially complies with the requirements of the statute.

R. C. 2963.30, Article III states, "* * * the prisoner * * * shall be brought to trial within one hundred eighty days after he [or she] shall have caused to be delivered to the prosecuting officery and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." The one hundred eighty days should not begin to run until the prosecuting attorney and court have been notified of the prisoner's whereabouts and his or her desire to be brought to a speedy trial. Therefore, I would join the jurisdictions which have held the one-hundred-eighty-day speedy trial period provided for by Article III of the Interstate Agreement on Detainers (R.C. 2963.30) does not begin to run until receipt by the prosecuting attorney in the receiving state of written notice of the prisoner's place of incarceration and his request for final disposition of the charges for which a detainer was placed against him. See United State v. Espinoza (C.A.9, 1988), 841 F.2d 326; Hall v. Florida (M.D.Fla.1987), 678 F.Supp. 858; Pinnock v. State (Fla.App.1980), 384 So.2d 738; Scrivener v. State (Ind.1982), 441 N.E..2d 954; Brown v. State (Ind.1986), 497 N.E.2d 1049; State v. White (1983), 234 Kan. 340, 673 P.2d

1106; Powell v. State (1983), 56 Md.App. 351, 467 A.2d 1052; State v. Walton (Mo.1987), 734 S.W.2d 502; State v. Moosey (R.I.1986), 504 A.2d 1001; and State v. Moore (Tenn.1989),774 S.W.2d 590. See, also, People v. Jellicks (1982), 116 Misc.2d 328, 455 N.Y.S.2d 327.

Moreover, the statute not only requires receipt of the prisoner's written notice, but also mandates that a completed certificate be sent by the appropriate official having custody of the prisoner to the prosecutor in the receiving state. The certificate contains the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. See R.C. 2963.30, Article III(a). This information is vital, and it may be difficult for the prosecuting attorney to make an informed decision on whether to prosecute the prisoner on the pending charges without receipt of a completed certificate of the official having custody of the prisoner. The majority allows the one-hundred-eighty-day period to commence before the prosecutor has all the necessary information to consider the merits of the case and determine whether to pursue a trial in the receiving state. The result reached today completely overlooks legitimate reasons for delay and places the burden totally on the receiving state, regardless of the cause for delay. Such a result is contrary to public interest.

Hence, I would reverse the decision of the court of appeals, adopt the reasoning of the jurisdictions cited above, and approve the analysis in State v. Black (1990), 70 Ohio App.3d 440, 591 N.E.2d 368; and State v. Reitz (1984), 26 Ohio App.3d 1, 26 OBR 168, 498 N.E.2d 163.

Moyer, C.J. and Holmes, J., concur in the foregoing dissenting opinion.