JOURNAL ENTRY AND OPINION
This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
Defendant-appellee Thomas Pierce was indicted and arraigned in November 1993. The trial court granted a motion to suppress the stop leading to defendant's arrest, a decision this court overturned in May 1995. An appeal to the Supreme Court of Ohio was denied on November 30, 1995.
In the case at bar, the state appeals the trial court's decision to grant appellee's motion to dismiss for lack of a speedy trial. According to the state, the speedy trial provisions set forth in R.C. 2963.30 were never triggered. We disagree.
Since January 1997, defendant has been incarcerated in Pennsylvania. The record and the parties' briefs are devoid of information regarding the status of the case between May 1995 and January 1997. The docket shows that some pretrials were held in early 1998 and that in June 1998, defendant's counsel notified the trial court that defendant was incarcerated in Pennsylvania. As a result of defense counsel's notice, the trial court issued a capias requesting the temporary return of defendant to Ohio. The Sheriff's office "prepared a detainer dated July 15, 1998, and a request for Temporary Custody to Pennsylvania, pursuant to Interstate Agreement on Detainers was sent to Pennsylvania, but the State of Pennsylvania never responded." Appellant's brief at 2. The docket contains the following entry:
 Capias issued. The sheriff's department is ordered to immediately return defendant from the state correctional facility at Camp Hill, P.O. Box 8837 Camp Hill, Pennsylvania or from any other Pennsylvania correctional institution.
 Defendant is being held at the county jail for trial in case CR 301570. Defendant is black/male DOB 8/12/49 SSN * * *." Journal Entry of June 26, 1998.
There is no explanation in the record of why the entry states that the prisoner is both ordered to be returned and supposedly present in the county jail at the same time. At the hearing, the court indicated that the entry stating that the prisoner was present in the county jail was an error. Neither party disputes this conclusion.
Apparently no further activity occurred until defendant filed a Motion for Discharge in June 2000, alleging that because his counsel had advised the state that he was incarcerated in Pennsylvania and because the court had ordered defendant returned to the state for trial on the charges, "defendant did all that was required of him." Motion for Discharge of June 30, 2000. The state did not oppose the motion. During the oral hearing on the motion, the state did not offer any objection. The record reflects the state offered the following partial comments:
 I cannot offer an explanation as to where the breakdown occurred, your Honor, as to why additional action was not taken based upon the detainer that was placed dated July 15th, 1998. * * *. I cannot explain the reason why this document from July 15th, 1998, was never acted upon. So I stand before the Court agreeing to let the Court make a decision on this issue.
The trial court granted the motion. The State appealed arguing the trial court erred in determining that the speedy trial provisions of R.C. 2963.30 applied to defendant in this case.
Appellant states one assignment of error:
 I. THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL.
Both parties rely on R.C. 2963.30, the Interstate Agreement on Detainers (IAD), which provides a means for participating states to extradite prisoners between states for trials on outstanding indictments while the prisoners are still serving sentences in one of the states.[1]
The requirements of the statute differ depending upon whether the prisoner or the state requests the prisoner's return for trial. If the prisoner initiates the request for his return, Article III(a) of the IAD controls. Under Article III, trial must begin within one hundred eighty days after the receiving state's authorities receive the prisoner'srequest for trial." State v. Brown (1992), 79 Ohio App.3d 445, 448
(citations omitted, emphasis in original).
The statute describes additional requirements of the prisoner: First, he "shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." R.C. 2963.30 Article III(a). Also to be included along with this notice is "a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." Id.
Second, the prisoner must give the notice and request to the "warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." R.C. 2963.30 Article III(b).
In 1992, the Ohio Supreme Court applied the rule of substantial compliance to a requirement in the IAD. State v. Mourey (1992),64 Ohio St.3d 482, 597 N.E.2d 101. In Mourey, defendant, while incarcerated in California on unrelated charges, was indicted by the grand jury of Franklin County, Ohio in July 1986. Three years later, the Franklin County Sheriff's office discovered that defendant was incarcerated in California. The Sheriff's office filed a detainer with the appropriate California police officials. Additionally, in December 1989, defendant filed a California "Interstate Agreement on Detainers" form with the institution where he was imprisoned.
Defendant was returned to Ohio in June 1990 and a trial was set for July. At trial, defendant filed a motion to dismiss the case because the state of Ohio had failed to bring him to trial within the one-hundred-eighty-day limitation period set forth in R.C. 2963.30. The trial court overruled the motion and defendant pleaded no contest to the charges.
On appeal, the court reversed, finding that defendant had substantially complied with IAD requirements when he filed his form with the California penal authorities. The court of appeals certified the case to the Ohio Supreme Court because of a conflict with earlier decisions by courts in Miami County and Summit County in State v. Black (1990),70 Ohio App.3d 440, 591 N.E.2d 368 and State v. Reitz (1984),26 Ohio App.3d 1, 498 N.E.2d 163, respectively. On certification, the Ohio Supreme Court affirmed the decision of the court of appeals and held as follows:
 [T]hat the one-hundred-eighty-day time period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers, begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof.
Mourey at 486, 597 N.E.2d 104. The court further held that defendant had substantially complied when he filed his IAD form with the facility where he was being held. The court stated:
 [W]e believe defendant did everything reasonably required of him that was within his control when he "caused to be delivered" his IAD request form to the California prison officials. We therefore embrace the substantial-compliance standard as being closer to effectuating the purposes of the IAD, because a strict interpretation of the agreement tends to hold the prisoner accountable for measures and duties that are totally beyond his or her control. In our view, delays in expediting an IAD request attributable to prison officials or prosecuting authorities should not toll the running of the one-hundred-eighty-day time period. Moreover, we believe that a substantial-compliance standard is in line with the liberal-construction mandate set forth in Article IX of the agreement.
Mourey at 487, 597 N.E.2d 105.[2]
Since Mourey, the U.S. Supreme Court has discussed when the time begins: Fex v. Michigan (1993), 507 U.S. 43, 113 S.Ct. 1085,122 L.Ed.2d 406. The state in the case at bar cites Fex in support of its claim that the 180-day period does not begin to run until the prisoner's request "has actually been delivered to the court and prosecuting officer." Apparently, the state rejects notice by defendant's counsel to the court and prosecution as constituting the prisoner's request.
In Fex, neither the receiving state nor the court ever received any request. The issue was whether the "180 days must be computed from the date the prisoner `caused'" delivery to be made or "delivery in fact occurs." The Supreme Court focused on whether the inmate's request was actually delivered to the lower court and state; the Supreme Court found it was not. Analyzing the language of the Interstate Agreement on Detainers, the Supreme Court explained that nowhere does the IAD require "a record of when the request is transmitted to the warden." The key to determining when the 180-day period begins, the Court concluded, is delivery upon the receiving state and its court. The court emphasized that what is important is there be documentary evidence of the date of delivery to the officials of the receiving state.
The Court further explained that a warden's negligence should not be able to preclude prosecution
 before the prosecutor even knows it has been requested. It is possible that this consequence could be avoided by the receiving state court's invocation of the `good-cause continuance' clause of Article III(a) n5 * * *. It is more reasonable to think that the receiving State's prosecutors are in no risk of losing their case until they have been informed of the request for trial.
In the case at bar, however, the inmate's counsel gave notice to both the court and the inmate. The court record, moreover, documents this date. The state even took some initial action; however, it failed to follow through. As the state said, there was a "breakdown" and "additional action was not taken." Here, there is no dispute that delivery in fact was made upon both the court and state and that prosecution had begun. The prosecutor, however, did not request any continuance under Article III. Thus, we see no conflict between Fex and the case at bar.[3]
Here, the state urges us to find appellant's right to speedy trial was not violated because he did not properly request final disposition as specified in the statute. We disagree and find Mourey to be dispositive.[4] In June 1998, defendant initiated the request for his return when his attorney notified the trial court of defendant's place of imprisonment in Pennsylvania. After this notice, the state then issued a detainer for defendant's return in July 1998; thus indirectly he caused notice to be sent to the Pennsylvania authorities where he was incarcerated. The Pennsylvania authorities never responded.
During the hearing on defendant's motion for discharge, the state acknowledged that after the detainer had been sent to Pennsylvania, a "breakdown" occurred and no one had acted upon the request. Unlike the defendants in Mourey or Fex, defendant in the case at bar provided notice to the court and prosecuting attorney, both of whom actually received it, and also indirectly caused notice to be given to the Pennsylvania authorities. The fact that Pennsylavania did not respond and the state of Ohio never followed up on the detainer request is not defendant's fault. Defendant did all that he could possibly do in providing notice to all of the appropriate authorities. Defendant has, therefore, substantially complied with the IAD.
The appellant's assignment of error is overruled and the judgment of the trial court affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and JAMES D. SWEENEY, J., CONCUR.
[1] Neither party attached the statute. App.R. 16(E) requires parties to attach to their briefs copies of statutes they rely on.
[2] The dissent in Mourey explained that a completed certificate containing the term of the commitment, the time already served, the time remaining, the amount of good time earned, and the time of parole eligibility must also be sent. The dissent explained that this information is vital for the prosecuting attorney to make an informed decision on whether to prosecute the prisoner on the pending charges. In the case at bar, however, the decision to prosecute had already been made. Thus the certificate does not have the same function when a case is already in court and is proceeding to trial.
[3] Similarly, in State v. Wells (1996), 110 Ohio App.3d 275,673 N.E.2d 1008, which followed Fex, the issue was whether there was constructive or actual delivery when the post office misdelivered the IAD request. Misdelivery is not the issue in the case at bar.
[4] See, State v. Lawrence (Aug. 23, 2001), Cuyahoga App. No. 78514, unreported, 2001 Ohio App. LEXIS 3713.
 Journal Entry
SUA SPONTE, THE JOURNAL ENTRY AND OPINION AS ANNOUNCED BY THE COURT ON DECEMBER 20, 2001, IS HEREBY VACATED. THE APPEAL IS REINSTATED TO THE ACTIVE DOCKET SUBJECT TO THE ANNOUNCEMENT OF AN AMENDED JOURNAL ENTRY AND OPINION. UPON THE ANNOUNCEMENT OF THE AMENDED JOURNAL ENTRY AND OPINION, ALL PARTIES SHALL HAVE THE OPPORTUNITY TO FILE ANY APPROPRIATE MOTION, INCLUDING A MOTION FOR RECONSIDERATION PURSUANT TO APP.R. 26(A) AND A MOTION TO CERTIFY A CONFLICT PURSUANT TO APP.R. 25. IN ADDITION, THE MOTION TO CERTIFY A CONFLICT, NO. 34764, AS FILED BY THE APPELLANT ON DECEMBER 31, 2001, IS DENIED.