THE STATE OF OHIO, APPELLANT, *v.* MOUREY, APPELLEE.

[Cite as *State v. Mourey* (1992), 64 Ohio St.3d 482.]

_____

(Nos. 91–1378 and 91–2024—Submitted May
19, 1992—Decided September 2, 1992.)

*Michael Miller*, Prosecuting Attorney, and *Joyce S. Anderson*, for appellant.

*Randall Dana*, Ohio Public Defender, and *Kort Gatterdam*, for appellee.

SWEENEY, J. The issue certified by the court of appeals to this court is as follows: "When does the one-hundred-eighty-day period set forth in R.C. 2963.30, within which a criminal defendant incarcerated in another jurisdiction must be brought to trial, begin to run?"

For the reasons that follow, we hold that the one-hundred-eighty-day time period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers, begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof. Since we find that defendant substantially complied with R.C. 2963.30 on December 19, 1989, we therefore affirm the decision of the court of appeals below.

R.C. 2963.30 provides in relevant part:

"THE INTERSTATE AGREEMENT ON DETAINERS

"The contracting states solemnly agree that:

"Article I

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, *it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.* The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

"* * *

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction *written notice of the place of his imprisonment and his request for a final disposition* to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof *shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail,* return receipt requested." (Emphasis added.)

The appellant, state of Ohio, essentially argues that the one-hundred-eighty-day speedy trial period set forth above will begin only when the prisoner (defendant) files with the prosecutor and the court a proper request accompanied by certification from the official having custody of the defendant.

The defendant contends that R.C. 2963.30 requires only that a prisoner substantially comply with the terms of the IAD. Defendant submits that once a prisoner completes his or her responsibility as set forth in the statute, the one-hundred-eighty-day time period begins to run.

As provided in Article I of the agreement, the purpose of the IAD is to encourage the expeditious and orderly disposition of charges that are outstanding against prisoners who are incarcerated in other states that are parties to the agreement. In addition, Article IX of the IAD, as codified by R.C. 2963.30, provides in part that "[t]his agreement shall be liberally construed so as to effectuate its purposes."

In order to adequately answer the certified question before us in line with the stated purposes of the IAD, it must be understood and determined what processes are under the control of the prisoner upon whom a detainer has been filed. A careful review of Article III(a) of R.C. 2963.30 reveals that the prisoner *"shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *."* (Emphasis added.) The other requirements listed in Article III(a) are the responsibility of the officials having custody of the prisoner.

Article III(b) of the agreement then requires that the written notice of the prisoner "* * * shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him * * *." The remainder of subsection (b) provides the other responsibilities of the officials having custody of the prisoner.

Upon a careful review of the record, we believe defendant did everything reasonably required of him that was within his control when he "caused to be delivered" his IAD request form to the California prison officials. We therefore embrace the substantial-compliance standard as being closer to effectuating the purposes of the IAD, because a strict interpretation of the agreement tends to hold the prisoner accountable for measures and duties that are totally beyond his or her control. In our view, delays in expediting an IAD request attributable to prison officials or prosecuting authorities should not toll the running of the one-hundred-eighty-day time period. Moreover, we believe that a substantial-compliance standard is in line with the liberal-construction mandate set forth in Article IX of the agreement.

The state's suggested remedy of a mandamus action or the like to compel prison officials or prosecuting authorities to act upon a prisoner's request to resolve the detainer is, in our view, not really relevant or satisfactory, inasmuch as the IAD is designed to provide the *entire process* for resolving detainers. Thus, we believe that anything required under the IAD that is beyond the prisoner's control must be the responsibility of the states and their instrumentalities which are parties to the agreement. While case law interpreting the IAD provides examples of different types of unnecessary delays that have occurred in the resolution of detainers, see, *e.g., Black, supra,* and *Reitz, supra,* we do not believe the prisoner should be denied his or her right to a speedy trial once the prisoner has reasonably fulfilled his or her responsibilities under the agreement.

Based on all of the foregoing, we further hold that a prisoner substantially complies with the requirements of Article III(a) and (b) of R.C. 2963.30 when

he or she causes to be delivered to the prison officials where incarcerated, appropriate notice or documentation requesting a disposition of the charges for which the detainer has been filed against him or her.

Research indicates a split of authority around the country with respect to the adoption of a strict or substantial-compliance standard in interpreting a prisoner's compliance with the IAD. See Annotation, Validity, Construction, and Application of Interstate Agreement on Detainers (1980), 98 A.L.R.3d 160. However, as previously mentioned, we find the substantial-compliance standard is more consonant in promoting the stated purposes of the agreement, whereas a stricter standard tends to undermine such purposes. Accord *State v. Ferguson* (1987), 41 Ohio App.3d 306, 535 N.E.2d 708. See, *e.g., Pittman v. State* (Del.1973), 301 A.2d 509; *State v. Seadin* (1979), 181 Mont. 294, 593 P.2d 451; *Commonwealth v. Martens* (1986), 398 Mass. 674, 500 N.E.2d 282; and *McBride v. United States* (D.C.App.1978), 393 A.2d 123, certiorari denied (1979), 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482.

In reviewing the law we adopt today as applied to the facts of the cause *sub judice,* we find that the defendant satisfied his responsibilities set forth in R.C. 2963.30 by sufficiently completing the request form for a speedy trial and delivering it to the California prison officials. The fact that the California officials failed to complete defendant's request pursuant to the requirements of the IAD should not be attributed to defendant, since he did everything that could be reasonably expected of him in commencing the process to resolve his detainer under the terms of the IAD. Since defendant substantially complied with the terms of the IAD on December 19, 1989, the one-hundred-eighty-day speedy trial time period of Article III(a) of R.C. 2963.30 began to run on that date. Thus, the state's failure to bring defendant to trial within that speedy trial time period constituted a violation of his rights under the agreement, and the trial court erred in overruling defendant's motion to dismiss the Ohio charge brought against him.

Therefore, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and RESNICK, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting. I respectfully dissent from the majority decision. The practical result of today's majority opinion is that serious felony cases will potentially be dismissed through no fault of the prosecuting attorney. By holding that the one-hundred-eighty-day speedy trial period begins to run when the prisoner "substantially complies with the requirements of the statute," the majority completely overlooks legitimate reasons for delay

after the request by the prisoner is placed in the hands of the warden, commissioner of corrections or other appropriate prison officials. Additionally there could be instances where a prisoner confined in another state has several detainers pending in different jurisdictions within Ohio. In such a case, today's holding would require that all charges be prosecuted within one hundred eighty days of the date from which the prisoner substantially complies with the requirements of the statute.

R.C. 2963.30, Article III states, " * * * the prisoner * * * shall be brought to trial within one hundred eighty days after he [or she] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." The one hundred eighty days should not begin to run until the prosecuting attorney and court have been notified of the prisoner's whereabouts and his or her desire to be brought to a speedy trial. Therefore, I would join the jurisdictions which have held the one-hundred-eighty-day speedy trial period provided for by Article III of the Interstate Agreement on Detainers (R.C. 2963.30) does not begin to run until receipt by the prosecuting attorney in the receiving state of written notice of the prisoner's place of incarceration and his request for final disposition of the charges for which a detainer was placed against him. See *United States v. Espinoza* (C.A.9, 1988), 841 F.2d 326; *Hall v. Florida* (M.D.Fla.1987), 678 F.Supp. 858; *Pinnock v. State* (Fla.App.1980), 384 So.2d 738; *Scrivener v. State* (Ind.1982), 441 N.E.2d 954; *Brown v. State* (Ind.1986), 497 N.E.2d 1049; *State v. White* (1983), 234 Kan. 340, 673 P.2d 1106; *Powell v. State* (1983), 56 Md.App. 351, 467 A.2d 1052; *State v. Walton* (Mo.1987), 734 S.W.2d 502; *State v. Moosey* (R.I.1986), 504 A.2d 1001; and *State v. Moore* (Tenn.1989), 774 S.W.2d 590. See, also, *People v. Jellicks* (1982), 116 Misc.2d 328, 455 N.Y.S.2d 327.

Moreover, the statute not only requires receipt of the prisoner's written notice, but also mandates that a *completed* certificate be sent *by* the appropriate official having custody of the prisoner *to* the prosecutor in the receiving state. The certificate contains the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. See R.C. 2963.30, Article III(a). This information is vital, and it may be difficult for the prosecuting attorney to make an informed decision on whether to prosecute the prisoner on the pending charges without receipt of a *completed* certificate of the official having custody of the prisoner. The majority allows the one-hundred-eighty-day period to commence before the prosecutor has all the necessary information to consider the merits of the case

and determine whether to pursue a trial in the receiving state. The result reached today completely overlooks legitimate reasons for delay and places the burden totally on the receiving state, regardless of the cause for delay. Such a result is contrary to public interest.

Hence, I would reverse the decision of the court of appeals, adopt the reasoning of the jurisdictions cited above, and approve the analysis in *State v. Black* (1990), 70 Ohio App.3d 440, 591 N.E.2d 368; and *State v. Reitz* (1984), 26 Ohio App.3d 1, 26 OBR 168, 498 N.E.2d 163.

Moyer, C.J., and Holmes, J., concur in the foregoing dissenting opinion.