OPINION
{¶ 1} Christopher P. Ward was indicted on September 26, 2000 by a Franklin County grand jury, charged with three fifth-degree felonies: receiving stolen property, possessing criminal tools, and forgery. The indictment stemmed from alleged incidents occurring on October 4, 1999, related to the theft of a passport and a check, the latter of which was allegedly forged by Ward to purchase items at a local K-Mart.
{¶ 2} At the time of the Franklin County indictment, Mr. Ward was already in custody, serving a one-to-ten-year prison sentence in the Huttonsville Correctional Center in West Virginia. Ward did not challenge extradition to Ohio on the instant charges. The circumstances surrounding his extradition are the subject of the first assignment of error before us.
{¶ 3} Following an unsuccessful motion to dismiss the charges based upon a claimed speedy trial violation, again the subject of the first assigned error, Mr. Ward's case ultimately proceeded to a jury trial on December 10, 2001.
{¶ 4} On December 11, 2001, the jury returned guilty verdicts as to all counts. The following day, the trial judge sentenced Mr. Ward to three 12-month terms of imprisonment, to be served consecutively to each other and consecutive to the prison time Ward was already serving in West Virginia. The judgment and sentence of the trial court was journalized pursuant to an entry filed December 13, 2001.
{¶ 5} Christopher P. Ward ("appellant") has timely appealed his conviction and sentence, assigning three errors for our consideration:
{¶ 6} "ASSIGNMENT OF ERROR ONE
{¶ 7} "The trial court erred when it failed to dismiss the charges against the defendant-appellant, [of] which the defendant-appellant was convicted, pursuant to R.C. 2963.30, requiring that the defendant-appellant be brought to trial within 180 days.
{¶ 8} "ASSIGNMENT OF ERROR TWO
{¶ 9} "The trial court erred when it sentenced the defendant to maximum consecutive sentences on all counts. Defendant was sentenced to consecutive maximum sentences for exercising his right to trial.
{¶ 10} "ASSIGNMENT OF ERROR THREE
{¶ 11} "The verdict is against the manifest weight of the evidence and is insufficient for a conviction."
{¶ 12} Appellant's first assignment of error contends that the trial court violated R.C. 2963.30, Ohio's extradition statute entitled "The Interstate Agreement on Detainers" ("IAD"). Appellant argues that the charges should have been dismissed because he was not brought to trial within the 180-day time period in accord with the IAD. We first look to the record before us to track the procedural posture of the case as it existed when appellant filed the motion seeking dismissal of the charges.
{¶ 13} On September 28, 2000, the Franklin County Clerk of Courts mailed, via certified mail/return receipt requested, a summons to Mr. Ward to appear for arraignment on October 11, 2000. The certified mail receipt indicates that it was sent to him at 97½ Chicago Avenue in Columbus. The mail was returned to the clerk's office, marked "return to sender" and "not deliverable as addressed[,] unable to forward." The returned envelope, date-stamped October 11, is filed with the record. Obviously, having not received service of the summons, Ward failed to appear for the October 11 arraignment. As a result of his failure to appear, a capias was issued, ordering Ward to be arrested. The record indicates that the capias was filed October 13, 2000.
{¶ 14} The record next includes a form "notice" from the criminal division of the Franklin County Clerk of Courts to the Franklin County Prosecuting Attorney's Office. The "notice" is date-stamped June 22, 2001, and reads: "PER TELE-TYPE SUBJECT IS IN THE CORRECTIONAL CTR HUTTONSVILLE." Aside from the date-stamp of June 22, there is no indication of when it was served upon and/or received by the prosecuting attorney.
{¶ 15} A return of service of the October 11, 2000 capias indicates that appellant was taken into custody by the Franklin County Sheriff's Department on August 7, 2001, and jailed in Franklin County the same date.
{¶ 16} On August 13, 2001, appellant entered a not guilty plea and the Franklin County Public Defender was appointed to represent him. However, new counsel was subsequently appointed pursuant to an entry filed August 21, 2001, because the public defender's office had a potential conflict of interest in the case. New counsel soon thereafter began pursuing discovery.
{¶ 17} Notices were sent to counsel indicating a trial date of October 16, 2001 had been scheduled.
{¶ 18} Pursuant to an entry journalized October 16, 2001, the trial scheduled for that date was continued, over defense counsel's written objection, to November 19, 2001. The entry does not bear appellant's signature. The stated reason for the state's motion was that the assistant prosecutor assigned to the case was "in [the] hospital." The trial was continued to November 19, 2001.
{¶ 19} Again over defense counsel's written objection, the state successfully obtained another continuance of the trial. The entry indicates the cause for the continuance was that both the prosecutor and the court were "in trial." The November 19, 2001 date was continued to December 10, 2001. Again, this entry does not bear appellant's signature.
{¶ 20} On December 10, 2001, defense counsel filed a motion to dismiss the case against appellant for a violation of his speedy trial rights, citing the 180-day provision of the IAD, which is set forth below.[1]
{¶ 21} Preliminarily, we note, as have other courts, that "detainer" is not defined with specificity in the IAD. However, simply put, a detainer simply operates to ensure that prison officials in the state in which a prisoner is incarcerated have received "official notice of criminal charges pending in another state" against the same prisoner. See, e.g., State v. Robinson (Sept. 9, 1997), Franklin App. No. 97APA02-224, citing State v. Wells (1994), 94 Ohio App.3d 48.
{¶ 22} The IAD is codified by R.C. 2963.30. Article I of the IAD speaks to the primary purposes underlying the agreement:
{¶ 23} "The party states find that charges outstanding against a prisoner, detainers based on untried indictments * * *, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments * * *." Id. (Emphasis added.) Thus, in short, the IAD's primary purpose is to provide a mechanism by which to dispose of such interstate criminal charges with prompt finality.
{¶ 24} As the assignment of error suggests, the IAD contains within it certain mandatory time constraints, which operate wholly independently of Ohio's statutory speedy trial provisions. "R.C. 2941.401
is merely a [speedy trial] state statute, which Ohio courts have the ultimate authority to interpret. Because the IAD is a congressionally sanctioned interstate compact under the Compact Clause of Section 10, Article I, of the United States Constitution, its interpretation presents a question of federal law." State v. Wells (1996), 110 Ohio App.3d 275,281, citing Cuyler v. Adams (1981), 449 U.S. 433 at 438-442.
{¶ 25} Before the trial court and on appeal, appellant bases his speedy-trial claim upon Article III of the IAD. Provision (a) of Article III sets forth significant criteria and procedures which reads, in pertinent part:
{¶ 26} "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment * * * on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." Id. (Emphasis added.)
{¶ 27} The latter-referenced "certificate" was properly completed by the West Virginia warden who acted in accord with that emphasized portion of the provision upon which appellant acted; appellant indeed "caused to be delivered * * * his request for a final disposition." Specifically, a prison-issued form entitled "interview request" signed and dated by appellant on June 6, 2001, indicates that appellant "just received a detainer" and that he "want[ed] to file for a final disposition * * * immediately."
{¶ 28} In turn, the warden of the Huttonsville Correctional Center acted promptly, in accordance with his duties under the IAD, on June 7, 2001, by completing the necessary forms required by the IAD to further the process initiated by appellant. The first form, entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments," served to notify the Franklin County Prosecuting Attorney of appellant's current status as an inmate in West Virginia and, obviously, the inmate's request for a final disposition of the Franklin County indictment. In another IAD form, entitled "Offer to Deliver Temporary Custody," again dated June 7, 2001, the warden of the Huttonsville Correctional Center wrote to the Franklin County Prosecuting Attorney, stating, in part:
{¶ 29} "Pursuant to the * * * [IAD], the undersigned hereby offers to deliver temporary custody of * * * [appellant] to the appropriate authority in your state in order that speedy and efficient prosecuting may be had on the indictment * * * which is described in the inmate's request.
{¶ 30} "The required Certificate of Inmate Status is enclosed." The certificate included required IAD information, including, inter alia, the inmate's offense and sentence ("daytime burglary 1-10 years"), time already served (eleven months, fifteen days), parole eligibility date (June 2001), and maximum expiration date under present sentence (June 22, 2010).
{¶ 31} In return, the receiving state bears certain duties under the IAD in accepting temporary custody. Article V(b) provides, in relevant part:
{¶ 32} "(b) The officer or other representative of a state accepting an offer of temporary custody shall present the following upon demand:
{¶ 33} "(1) Proper identification and evidence of his authority to act for the state into whose temporary custody the prisoner is to be given.
{¶ 34} "(2) A duly certified copy of the indictment * * * on the basis of which the detainer has been lodged and on the basis of which the request for temporary custody of the prisoner has been made." (Emphasis added.)
{¶ 35} In compliance with provision (b)(1), the Franklin County Prosecuting Attorney responded by signing and forwarding a form entitled "Agreement on Detainers" to the Huttonsville warden. The form, hand-dated "26 June 01," and date-stamped July 3, 2001, accepted the offer of temporary custody "in connection with a prisoner's request for disposition of a detainer." Additional text of the form letter from the prosecutor reads:
{¶ 36} "In response to your letter of June 7, 2001, and offer of temporary custody regarding * * * [appellant], please be advised that I accept temporary custody and that I propose to bring this person to trial on the indictment named in the offer within the time specified in Article III(a) of the Agreement on Detainers."[2]
{¶ 37} Accompanying the prosecutor's June 26, 2001 response is a certification from a judge of the Franklin County Court of Common Pleas, hand-dated June 27, 2001, which serves to attest that the prosecutor is the appropriate official under the IAD to effectuate the proceedings. The June 27 certification is also date-stamped July 3, 2001.
{¶ 38} As indicated above, the original IAD paperwork is not in the record, notwithstanding the fact that copies eventually appearing in the record were date-stamped July 3, 2001. In fact, for reasons which are not apparent, the IAD forms referenced herein are copies of IAD documents appended to appellant's motion to dismiss; the transcript of the motion hearing suggest that defense counsel obtained the IAD paperwork via the discovery process. Because the original IAD paperwork is not in the record, we are unable to ascertain compliance with mandatory provision (b)(2) — presenting "upon demand" a "duly certified copy of the indictment" upon which the detainer is based.
{¶ 39} Also owing to the fact that appellant's trial counsel filed copies of the IAD paperwork in the absence of originals in the record, we cannot ascertain with certainty when the receiving state, via the prosecuting attorney, actually mailed or otherwise forwarded the appropriate papers to the Huttonsville prison officials.
{¶ 40} Returning now to appellant's motion to dismiss, we look to the transcript of proceedings to ascertain the trial court's rationale underlying its decision to overrule the motion to dismiss. The motion was argued on December 10, 2001, the date the trial had been continued to previously over defense counsel's objections.
{¶ 41} Appellant's trial counsel argued that Article III's 180-day time period lapsed December 7, 2001, based upon a calculation of time beginning to run on June 7, 2001 — the date upon which appellant (through his warden) formally initiated the request for disposition.
{¶ 42} The transcript reveals that the prosecution essentially conceded that time would have run under the 180-day provision but for the continuances which had been granted in the case. The trial court ultimately agreed. Counsel and the court clearly proceeded in accordance with one particular case upon which defense counsel relied, State v. Mourey (1992), 64 Ohio St.3d 482.
{¶ 43} In Mourey, the Supreme Court of Ohio decided the issue of when time begins to run under the IAD for speedy trial purposes.[3]
{¶ 44} Ghassan Mourey had been in a California prison when he filled out IAD forms such as appellant in the instant case. Mourey filled out the forms on December 19, 1989, and the state of Ohio did not effectuate his return to Ohio until June 20, 1990. The case was scheduled for trial in the Franklin County Court of Common Pleas on July 18, 1990. On that date, Mourey filed a motion to dismiss based upon a violation of the 180-day speedy trial provision of the IAD.
{¶ 45} The Mourey court concluded that the 180 days lapsed on June 17, 1990 and, accordingly, agreed that the dismissal motion should have been granted when sought pursuant to his July 18 motion. By so concluding, the Supreme Court of Ohio held that the 180-day time period set forth in Article III of the IAD "begins to run when a prisoner substantially complies" with the IAD's requirements under Article III(a) and (b) (i.e., causing to be delivered to the prosecutor, via the warden, "written notice of the place of his imprisonment and his request for a final disposition"). Id. at 485. (Emphasis added.) In adopting the substantial-compliance standard, the Mourey court explained:
{¶ 46} "As provided in Article I of the agreement, the purpose of the IAD is to encourage the expeditious and orderly disposition of charges that are outstanding against prisoners who are incarcerated in other states that are parties to the agreement. In addition, Article IX of the IAD, as codified by R.C. 2963.30, provides that '[t]his agreement shall be liberally construed so as to effectuate its purposes.'" Id. at 486. The court further stated that "delays in expediting an IAD request attributable to prison officials or prosecuting authorities should not toll the running of the [180-day] time period." Id. (Emphasis added.)
{¶ 47} Presumably, following the rationale of the Mourey decision in this case, counsel and the trial judge focused on the reasonableness and/or necessity of the continuances granted over defense counsel's objections.
{¶ 48} Notwithstanding the foregoing, however, Mourey no longer necessarily controls the issue as to when the time begins to run for speedy trial purposes. In Fex v. Michigan (1993), 507 U.S. 43, the United States Supreme Court effectively overruled that portion of Mourey by holding that an inmate's delivery to the warden of his request for disposition is not the "triggering event" for purposes of counting the 180 days. Instead, the Court held that "the receiving State's receipt of the request starts the clock." Id. at 51. (Emphasis added.) The majority wrote:
{¶ 49} "* * * We hold that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." Id. at 53. (Emphasis added.) See, also, State v. Wells (1996), 110 Ohio App.3d 275; State v. Pierce (Feb. 15, 2002), Cuyahoga App. No. 79376.
{¶ 50} Based upon this record, we cannot ascertain with exactitude when appellant's IAD request was "actually * * * delivered to the court and prosecuting officer." The only dates we can ascertain are delineated above. Given the "liberal" standards by which we are bound pursuant to the IAD, we cannot say with the requisite certainty whether the prosecuting attorney received the warden's IAD paperwork (presumably mailed, or perhaps faxed, on June 7, 2001) on June 7, June 8, June 9, June 10, or some day thereafter. Nor can we ascertain whether the IAD paperwork was forwarded via regular mail, certified mail, or facsimile. One could surmise from this record that it would be completely devoid of the critical IAD information at issue if defense counsel had not appended it to the dismissal motion.
{¶ 51} During the course of the hearing on the motion to dismiss, defense counsel stated, without objection or exception from either the prosecution or the trial court, the following, with respect to the "teletype" discussed above:
{¶ 52} "* * * I just wanted to point out that on one of the documents the court cited, which was the document filed June 22, 2001, the second page of that shows on the teletype that Franklin County was aware that [appellant] — was aware May 31, 2001, that [appellant] was in the Huttonville [sic] Correctional Institution * * *." (Tr. 13; emphasis added.)
{¶ 53} Pursuant to Fex, supra, we must know exactly when delivery of the IAD information occurred. Based upon this record, we cannot determine whether the trial court's determination was in compliance with Fex.
{¶ 54} Accordingly, we are compelled to hold that, based upon this record, the government officials bound by the IAD did not demonstrate compliance with its requirements. Given the mandatory language of the rules of the IAD, including those set forth in Articles III and V discussed above, we cannot fault appellant for the deficiencies in this record.
{¶ 55} In addition to the considerable problems with this record, we also note another inquiry separate from that required under Article III(a) which was not addressed by the trial court. The IAD has another significant speedy trial provision of which Fex, supra, is not dispositive.
{¶ 56} Article IV(c) reads:
{¶ 57} "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Emphasis added.)
{¶ 58} Under the facts of this case, application of the 180-day rule and the 120-day rule could, in the absence of Fex, carry the same result. Although not directly addressed either below or before us, appellant does indirectly allude to Article IV(c), citing State v. Taylor (1988), 51 Ohio App.3d 173. Although appellant relies upon Taylor for his "180-day-violation" claim, Taylor actually addressed an Article IV(c), 120-day issue.
{¶ 59} Irrespective of the numerous deficiencies of this record, one fact is clear — appellant was "received" by Franklin County when he was arrested and jailed in Franklin County on August 7, 2001. Accordingly, the December 7, 2001 "180-day deadline" about which the parties argued is also the "120-day deadline" under Article IV.
{¶ 60} In Taylor, the court reviewed a claimed 120-day-violation where the defendant's trial took place, after one continuance and an unsuccessful motion to dismiss, four days after the IAD time period lapsed. The stated reason for the continuance was that the trial court had been involved in another criminal trial. The Taylor court reversed the defendant's conviction, holding that the failure to try him on or before the 120th day violated his rights under Article IV(c).
{¶ 61} The state in Taylor argued that the trial was timely because the continuance of his original trial date was valid under the IAD; specifically, the trial court's conflicting trial constituted a "necessary or reasonable continuance." In rejecting the state's argument, the court first noted that the record before it did "not reflect that the court granted a continuance in open court with either the defendant or his counsel present prior to the expiration of the time allowed by Article IV(c)." The court further reasoned:
{¶ 62} "Moreover, even if the court had granted a timely continuance in open court with either the defendant or his counsel present, Article IV(c) of the IAD requires a showing of `good cause' for such a continuance. The courts have held that a congested court calendar does not, by itself, automatically provide `good cause' to continue a trial date beyond the time limits allowed under the IAD." Taylor, citing Brown v. Wolff (C.A.9, 1983), 706 F.2d 902, 906-907; United States v. Ford (C.A.2 1977), 550 F.2d 732 (sua sponte continuances without any type of formal hearing did not comply with `open court' requirement), affirmed sub nom. United States v. Mauro (1978), 436 U.S. 340; Felix v. United States (D.C.App. 1986), 508 A.2d 101. Compare State v. Aaron (1984),102 N.M. 187, 692 P.2d 1336 (good cause for continuance).
{¶ 63} "In [Taylor's] case, trial was scheduled for April 21, 1987. Although the court may have been engaged in another criminal trial at time, we are unable to determine from the record whether [Taylor's] trial could have been rescheduled to a date on or before May 14, 1987 to satisfy the one-hundred-twenty-day time limit of Article IV(c). On this record, we could not say that the trial court's continuance beyond the one-hundred-twenty-day limit in this case was reasonable for good cause shown.
{¶ 64} "The lower court concluded that even if [Taylor's] trial did not commence within the time required by Article IV(c), the defendant was not prejudiced by reason of the fact that his trial * * * commenced four days later. While we are hard pressed to say that the defendant suffered any prejudice by reason of the four-day delay, the courts have held that the defendant need not demonstrate prejudice arising as a result of his delayed trial. * * *"
{¶ 65} The facts in the instant case are arguably distinguishable from one aspect of Taylor, insofar as the record before us demonstrates that appellant's trial counsel did sign the continuance entries, albeit with expressed objections, and the entries were journalized prior to the December 7, 2001 deadline. The record before us, however, is unclear as to the "open court" requirement; for example, there is no transcript of those proceedings. As noted above, appellant's signature was not on the entries and there is nothing in the record to indicate that he was anywhere but still in the county jail at the time the court granted the final continuance.
{¶ 66} With respect to the trial court's calendar in the instant case, the record does not reveal why appellant's case could not be scheduled on or before December 7, 2001, which was precisely the situation in Taylor, supra. Again, we reiterate that appellant is not to be faulted for the continuances of his trial, over his express objections, particularly in light of the "liberal" construction to be afforded IAD prisoners to effectuate the purposes and policies.
{¶ 67} The assistant prosecuting attorney who appeared before the trial court on December 10, 2001 (and ultimately argued the dismissal motion and tried the case), was not the originally-assigned prosecutor. The "new" prosecutor was the same who appeared at the November trial date to continue the case because the prosecutor originally assigned to the case had been hospitalized on the day of the November trial date. The prosecutor indicated that the original prosecutor was, in fact, still recuperating from his illness. The new prosecutor indicated that the motion to dismiss should be overruled because "it's only about three days over 180 days" and the previous continuances were reasonable.
{¶ 68} The record reveals that subpoenas were issued on November 6, 2001, under the name of the originally-assigned prosecutor for the November 19 trial date. Of particular interest is the subpoena issued to the alleged victim in this case, William Pickens (the owner of the check which was allegedly stolen and forged by appellant). The prosecutor issued the subpoena to the sheriff of Delaware County, Ohio, to serve it upon Mr. Pickens at his Powell, Ohio address. However, the subpoena indicated that Mr. Pickens would be "on call" for the November 19 trial; the prosecutor noted on the subpoena, "You need not attend unless telephoned." This subpoena was returned to Franklin County by the Delaware County Sheriff's Office, with a letter informing the prosecutor that the address of the subpoena was not in Delaware County's jurisdiction; it would have to be served by Franklin County. This letter, informing the issuing prosecutor of a failure of service of the subpoena on the victim, was date-stamped by the Franklin County Clerk of Court's Office on November 14, 2001.[4] This situation arguably could be exemplary of the IAD's requirement of a demonstration of "good cause shown in open court" in order to demonstrate whether a continuance was "necessary or reasonable." For example, if defense counsel wished to argue that the prosecution actually desired to continue the November 19 trial date because it had difficulty obtaining service upon its victim, clearly a key witness, such a proceeding might have borne out such an argument and resulting ruling "in open court."
{¶ 69} The trial court simply concurred with the state's position — that the continuances were not unreasonable and, accordingly, appellant's speedy trial rights under the IAD were not violated. A reading of the transcript reveals the trial court's rejection of defense counsel's argument that the IAD should be examined more liberally in favor of a defendant than Ohio's speedy trial statutes. In so doing, the trial court erred.
{¶ 70} Based upon the state of this incomplete record, particularly the absence of evidence of the original IAD paperwork and evidence of service dates as discussed herein, we cannot determine whether there was a violation of appellant's rights under the IAD. In Wells, supra, this court revisited an earlier case whereby we "remanded the case for a hearing to allow the prosecution the opportunity to substantiate its claim of nondelivery" of an IAD request. See Wells, supra. In a similar vein, the instant case necessitates a remand in order to ascertain, with the requisite certainty plainly absent from this record, the dates on which the appropriate officials acted or failed to act, and thereafter whether the IAD was complied with in all respects, including the granting of the continuances over appellant's objections.
{¶ 71} Accordingly, this cause is reversed and remanded for the trial court to conduct further proceedings consistent with this opinion.
{¶ 72} The first assignment of error is sustained to the extent that the trial court needs to conduct further proceedings to enable the record to be clarified in those relevant particulars set forth in this opinion.
{¶ 73} Given the disposition of the first assignment of error, the remaining assignments of error are not ripe for review.
Judgment reversed and cause remanded with instructions.
BRYANT and BOWMAN, JJ., concur.
[1] As discussed infra, the required IAD paperwork does not even appear in this record until appellant's trial counsel filed it as an attachment to the motion to dismiss.
[2] As discussed below, there is no mention of the additional time limitation set forth in Article IV(c) of the IAD.
[3] The issue was before the Supreme Court pursuant to this court's certification of a conflict with several other jurisdictions. By its holding, the Mourey court affirmed this court's judgment in State v. Mourey (May 9, 1991), Franklin App. No. 90AP-1199.
[4] The record does not evidence the issuance of any subpoenas for the December 10, 2001 trial date.