OPINION
{¶ 1} This is an appeal from a decision of the Fairfield County Court of Common Pleas which granted summary judgment in favor of Appellees Sheriff Dave Phalen and Fairfield County Prosecutor Dave Landefeld on July 17, 2003.
 {¶ 2} Several additional Ohio and Pennsylvania officials had been included in Appellant's suit but had been dismissed with prejudice on motion earlier without appeal. These dismissals are not included in the July 17, 2003, entry which appellant states is the judgment entry as to which this appeal is taken, even though counsel for former Pennsylvania Governor Tom Ridge and Pennsylvania District Attorney Paul E. Cherry appeared pro hac vice and has also filed an appellee's brief on their behalf. Therefore, this appeal shall be considered with respect to the Fairfield County Sheriff and Prosecutor only.
 STATEMENT OF FACTS {¶ 3} The facts indicate that a warrant from the State of Pennsylvania was received by the Fairfield County Sheriff stating that appellant was a fugitive from justice for failing to appear for sentencing and requesting extradition.
 {¶ 4} Appellant was arrested on May 8, 1996, with an entry filed ordering extradition with the Pennsylvania authorities to take custody of appellant within two days later, by 4:00 p.m. on May 10, 1996, even though no process through either Pennsylvania or Ohio Governor's offices had taken place.
 {¶ 5} Pennsylvania failed to pick up appellant by such date and he was released.
 {¶ 6} On June 6, 1996, the Governor of Pennsylvania issued a requisition to Governor Voinovich of Ohio and authorized Transcor America to transfer Appellant.
 {¶ 7} A warrant of arrest was issued by the Governor of Ohio on June 12, 1996, and notice issued from such Governor to Fairfield County to send a pickup notice to Pennsylvania.
 {¶ 8} Thereafter, on July 10, 1996, an extradition hearing was scheduled in Fairfield County, at which Appellant failed to appear and a capias for his arrest was issued.
 {¶ 9} On February 21, 2001, Appellant was arrested on traffic charges including OMVI.
 {¶ 10} Due to the detainer on file from Pennsylvania, appellant was held for extradition in addition to the Ohio charges for failure to provide a bond.
 {¶ 11} Appellant commenced his action against Appellees, various Ohio officials and the Governor and District Attorney of Pennsylvania asserting a violation of R.C. 2921.52 in that the order from Pennsylvania was void under the Interstate Agreement on Detainers, R.C. 2963.30 et seq.
 ASSIGNMENTS OF ERROR {¶ 12} 1. "Abuse of discretion. According to black's law dictionary, 5th ed., p. 10, abuse of discretion is synonymous with a failure to exercise a sound, reasonable and legal discretion. Abuse of discretion is also any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to matter submitted.
 {¶ 13} "In this case, the lower court abused its discretion by not considering the facts and law presented regarding the defendants' use of sham legal process against appellant.
 {¶ 14} 2. "Denial of due process. Since the initiation of this action, appellant has demanded a trial by jury. The sham legal process statute provides both criminal and civil remedies for the victim, namely, appellant. Appellant was denied a trial by jury, thus appellant was denied due process."
 I, II {¶ 15} We will address Appellant's two Assignments of Error simultaneously as they are interrelated.
 {¶ 16} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 17} The denial of a jury trial due to the entry of summary judgment concerns Civil Rule 56, the purpose of which is to eliminate trial by jury or otherwise, if appropriate.
 {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 {¶ 19} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 20} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996),75 Ohio St.3d 280.
 {¶ 21} Appellant's Amended Complaint relied on various sections of the Interstate Agreement on Detainers codified as R.C. 2963.30 and on R.C. 2921.52 asserting a sham legal process due to invalidity of the re-issued extradition detainer.
 {¶ 22} Revised Code 2921.52 states:
 {¶ 23} "(A) As used in this section:
 {¶ 24} (1) "Lawfully issued" means adopted, issued, or rendered in accordance with the United States constitution, the constitution of a state, and the applicable statutes, rules, regulations, and ordinances of the United States, a state, and the political subdivisions of a state.
 {¶ 25} "(2) "State" means a state of the United States, including without limitation, the state legislature, the highest court of the state that has statewide jurisdiction, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state. "State" does not include the political subdivisions of the state.
 {¶ 26} "(3) "Political subdivisions" means municipal corporations, townships, counties, school districts, and all other bodies corporate and politic that are organized under state law and are responsible for governmental activities only in geographical areas smaller than that of a state.
 {¶ 27} "(4) "Sham legal process" means an instrument that meets all of the following conditions:
 {¶ 28} "(a) It is not lawfully issued.
 {¶ 29} "(b) It purports to do any of the following:
 {¶ 30} "(i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body.
 {¶ 31} "(ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property.
 {¶ 32} "(iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property.
 {¶ 33} "(c) It is designed to make another person believe that it is lawfully issued.
 {¶ 34} "(B) No person shall, knowing the sham legal process to be sham legal process, do any of the following:
 {¶ 35} "(1) Knowingly issue, display, deliver, distribute, or otherwise use sham legal process;
 {¶ 36} "(2) Knowingly use sham legal process to arrest, detain, search, or seize any person or the property of another person;
 {¶ 37} "3) Knowingly commit or facilitate the commission of an offense, using sham legal process;
 {¶ 38} "(4) Knowingly commit a felony by using sham legal process.
 {¶ 39} "(C) It is an affirmative defense to a charge under division (B)(1) or (2) of this section that the use of sham legal process was for a lawful purpose.
 {¶ 40} "(D) Whoever violates this section is guilty of using sham legal process. A violation of division (B)(1) of this section is a misdemeanor of the fourth degree. A violation of division (B)(2) or (3) of this section is a misdemeanor of the first degree, except that, if the purpose of a violation of division (B)(3) of this section is to commit or facilitate the commission of a felony, a violation of division (B)(3) of this section is a felony of the fourth degree. A violation of division (B)(4) of this section is a felony of the third degree.
 {¶ 41} "(E) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section."
 {¶ 42} Subsection (e) of Article IV of R.C. 2963.30 provides:
 {¶ 43} "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."
 {¶ 44} Subsection (c) of Article V states:
 {¶ 45} "If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."
 {¶ 46} Even though the Pennsylvania extradition was based on Appellant's failure to appear there for sentencing rather than pre-conviction proceedings, he asserts that the Interstate Agreement (R.C. 2963.30) is applicable primarily under Hall v.State of Florida (1987), 678 F. supp. 858 (with additional cases cited). Such case stated in paragraphs 2 and 3 of its syllabus:
 {¶ 47} Paragraph 2 states:
 {¶ 48} "Terms `untried indictment, information or complaint,' as used in Interstate agreement on Detainers Act, encompass sentencing, thereby imposing obligation on state to sentence petitioner in timely fashion upon petitioner's request that state do so, where state has secured petitioner's conviction on certain crimes through guilty plea, but has not sentenced petitioner on those crimes. Interstate Agreement on Detainers Act, Section 1, et seq., 18 U.S.C.A.App.
 {¶ 49} Paragraph 3 states:
 {¶ 50} "Petitioner invoked `timely trial' provisions of Interstate Agreement on Detainers Act by delivering to appropriate state authorities written request that final disposition be made on indictments, informations [SIC], or complaints pending against him. Interstate Agreement on Detainers Act, Section 2, Art. III(a), 18 U.S.C.A.App."
 {¶ 51} Judge Lawrence Grey in granting summary judgment to Appellees followed State v. Barnes (1984), 14 Ohio App.3d 351
and quoted the holding:
 {¶ 52} "The question here is whether R.C. 2963.30, the interstate agreement on detainers, is meant to apply to detainers placed on a prisoner who has already been convicted and needs only to be sentenced. The issue is one of first impression in this state. In cases where the prisoners have absconded from the court's jurisdiction after conviction, courts have held that the interstate agreement does not apply to detainers issued for sentencing because of the agreement's repeated references to `untried' indictments, informations [SIC} and complaints."
 {¶ 53} Such determination cited holdings of People v.Castoe (1978), 86 Cal.App.3d 484 and People v. Randolph
(1976), 85 Misc.2d 1022.
 {¶ 54} The same conclusion was reached in Gaches, Sr. v.Third Judicial District in and for the State of Utah (1976),416 F. Supp. 767, which stated:
 {¶ 55} "The Interstate Agreement on Detainers applies only to detainers based on an untried indictment or information or complaint. Interstate Agreement on Detainers Act, Sections 1-8, 18 U.S.C.A.App."
 {¶ 56} We need not determine that a conflict exists between Hall, supra, and the other referenced cases as Hall is premised on Article II(b) of the Interstate Agreement on Detainers (R.C.2963.30) stating:
 {¶ 57} "(b) `Sending state' shall mean a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to Article III hereof or at the time that a request for custody or availability is initiated pursuant to Article IV hereof."
 {¶ 58} Article III, Subsection (a) states:
 {¶ 59} "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."
 {¶ 60} Further references to the requirement of a request for final disposition occur in Subsections (b), (c), (d) and (e) of Article III:
 {¶ 61} The record of the Amended Complaint and other matters before the Court in considering Appellees' Civil Rule 56 Motion fail to indicate that Appellant made the required request for final disposition. Therefore, we find that the Interstate Agreement on Detainers (R.C. 2963.30) is inapplicable in the case subjudice notwithstanding whether, contrary to its explicit wording, it is applicable to sentencing proceedings.
 {¶ 62} The Ohio Supreme Court also recognized the necessity of a request for final disposition in ruling on the commencement of the 180-day time period in State v. Mourey (1992),64 Ohio St.3d 482:
 {¶ 63} "The 180-day speedy trial time period, set forth in Ohio's codification of Interstate Agreement on Detainers, begins to run when prisoner substantially complies with requirements of statute for initiating requests to be tried by state filing detainer. R.C. § 2963.30, Art. III(a, b).
 {¶ 64} "Prisoner substantially complies with requirements of Interstate Agreement on Detainers, regarding request to be tried by state filing detainer, so as to trigger running of 180-day time period for trial on detainer charges, when he or she causes to be delivered to prison officials where incarcerated, appropriate notice or documentation requesting disposition of the charges for which detainer has been filed against defendant. R.C. § 2963.30, Art. III(a, b)."
 {¶ 65} Therefore, since R.C. 2963.30 is in applicable as the condition precedent of a request for final disposition is absent, we must look to R.C. 2921.52 to determine if the Subsections thereof would apply, giving credence to the relief sought by the Amended Complaint.
 {¶ 66} Since R.C. 2963.30 is not appropriate to the facts, the detainer on its face was lawfully issued and was not void nor subject to dismissal with prejudice pursuant to such interstate codified compact.
 {¶ 67} The Sheriff and Prosecutor are not entitled to question the merits of the Pennsylvania detainer pursuant to R.C.2963.18:
 {¶ 68} "The guilt or innocence of an accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after a demand for extradition accompanied by a charge of crime under section 2963.03 of the Revised Code has been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."
 {¶ 69} We agree with Judge Lawrence Grey that Appellant's entire Amended Complaint is based upon R.C. 2963.30 and his conclusion that acting upon the void detainer bootstraps knowledge of a sham process to those acting to enforce its terms, and, as stated, since such interstate compact does not apply, his Amended Complaint is devoid of substance and R.C. 2921.52 is therefore also inapplicable.
 {¶ 70} We therefore disagree with each Assignment of Error in that no abuse of discretion occurred and since the purpose of Civil Rule 56 is to terminate pending actions when no material fact is rationally in dispute, the fact that a jury has been requested is of no consequence.
 {¶ 71} The court in Tschantz v. Ferguson (1994),97 Ohio App.3d 693, citing Honk v. Ross (1973), 34 Ohio St.2d 77, stated:
 {¶ 72} "A litigant's constitutional right to a jury trial is not abridged by the proper granting of a motion for summary judgment. Because the trial court properly granted summary judgment to appellee, appellant was not denied her right to a jury trial."
 {¶ 73} Also, this Court has held in Fair v. Poulson (1993), 5th Dist. App. No. CA-474:
 {¶ 74} "Rules and statutes providing for summary judgment are constitutional and do not deny a party's right to trial by jury. Rule 56(A) of the Ohio Rules of Civil Procedure provides that a party seeking to recover upon a claim may move for a summary judgment in his favor upon all or any part thereof. The primary function and duty of the court in passing on a motion for summary judgment are to determine whether or not there is any issues of fact to be tried. The duty of the court on such a motion is not to try issues of act, but rather to determine whether such issues exist. If there are issues of fact, the motion for summary judgment must be denied."
 {¶ 75} We therefore deny Appellant's First and Second Assignments of Error and affirm the judgment of the trial court.
Boggins, J., Hoffman, P.J. and Wise, J., concur